# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| REGINALD SULLIVAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:18-cv-00825-GMN-DJA |
| vs. | ) | |
| | ) | **ORDER** |
| CLARK COUNTY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pending before the Court is Defendants Clark County, John Martin, and Patrick Schreiber's (collectively, "Defendants'") Motion for Summary Judgment, (ECF No. 35). Plaintiff Reginald Sullivan ("Plaintiff") filed a Response, (ECF No. 45), and Defendants filed Reply, (ECF No. 52).  For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion for Summary Judgment.

## I.   <u>BACKGROUND</u>

This case arises from Plaintiff's allegations that Defendant unlawfully terminated Plaintiff's employment, twice, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. § 1981; 42 U.S.C. § 1983; and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*  (*See* Compl. ¶ 2, ECF No. 1).  On November 9, 2002, the Clark County Department of Juvenile Justice Services ("DJJS") hired Plaintiff as a Juvenile Detention Assistant. (Sullivan Decl. ¶ 1, Ex. 1 to Resp., ECF No. 45-2). On December 17, 2005, Plaintiff was promoted to the position of Child and Youth Program Technician II ("CYPT"), which is the position in controversy throughout the events giving rise to this case. (*Id.*).  The CYPT job description requires an employee to "lift materials weighing

up to fifty pounds and to restrain violent or aggressive juveniles." (CYPT Job Descrip., Ex. B to Mot. Summ. J. ("MSJ"), ECF No. 36-2).

On August 27, 2014, Plaintiff was injured at work when the chair that he was sitting on collapsed; Plaintiff sustained a lumbar injury, eventually requiring spinal surgery in June 2015. (Sullivan Dep. 15:13–16:1, Ex. V to MSJ, ECF No. 36-22).  Following this injury, Plaintiff did not return to work, and on August 14, 2015, Plaintiff received a letter from DJJS informing him that because he had been on leave for almost a year, Clark County may initiate "medical separation" proceedings to terminate his employment if he was unable to return to work. (*See id.* 16:2–15); (MSJ 2:10–13, ECF No. 35).  On August 24, 2015, Plaintiff completed a Functional Capacity Evaluation (FCE), which assessed his ability to perform the CYPT job duties. (*See* Aug. FCE, Ex. E to MSJ, ECF No. 36-5); (Sullivan Dep. 17:6–12, Ex. V to MSJ). The August FCE revealed that Plaintiff "[did] not appear to be capable of safely performing all of his pre-injury job duties," mainly because he was not able to lift and carry at least 100 pounds. (*See* Aug. FCE at 3, Ex. E to MSJ).

Nonetheless, Plaintiff returned to work on or about November 4, 2015, and Plaintiff's physician, Dr. Mark B. Kabins, requested that Plaintiff be exempted from Clark County's upcoming required defensive training tactics course to give Plaintiff's back more time to heal. (Sullivan Dep. 31:17–20, Ex. V to MSJ); (Kabins Request, Ex. F to MSJ, ECF No. 36-6). However, Plaintiff still completed the annual defensive tactics training on November 13, 2015. (Sullivan Decl. ¶ 10, Ex. 1 to Resp.).  On November 16, 2015, Plaintiff underwent a second FCE, during which he also failed to demonstrate that he could lift and carry 100 pounds. (Sullivan Dep. 35:17–36:13, Ex. V to MSJ).  Subsequently, Dr. Kabins notified Clark County that Plaintiff required permanent work restrictions, and on December 16, 2015, Plaintiff was "walked off the job" and no longer allowed to work. (Kabins Statement, Ex. H to MSJ, ECF No. 36-8); (Sullivan Decl. ¶ 9, Ex. 1 to Resp.).

On December 28, 2015, Plaintiff underwent a third FCE, this time demonstrating that he could *lift* 100 pounds. (Kabins Letter, Ex. L to MSJ, ECF No. 36-12).  Nonetheless, Dr. Kabins still declined to release Plaintiff to his full work duty because he did not demonstrate that he could *carry* 100 pounds. (*Id.*).

On January 25, 2016, DJJS initiated a thirty-day medical separation, culminating in Plaintiff's termination on March 3, 2016, after a Step-1 termination hearing. (Notice of Medical Separation, Ex. K to MSJ, ECF No. 36-11); (Mar. Step-2 Letter, Ex. C to MSJ, ECF No. 36-3). On March 10, 2016, the Step-1 decision issued, upholding the medical separation. (Mar. Step-2 Letter, Ex. C to MSJ).  However, prior to the Step-2 termination hearing, Dr. Kabins released Plaintiff to full work duty without restrictions, leading to a reversal of the medical separation; Plaintiff was reinstated to his CYPT position as of May 1, 2016. (*Id.*).

On August 6, 2016, Plaintiff filed a Charge of Discrimination with the Nevada Equal Rights Commission, alleging discrimination based on race, sex, and retaliation. (Charge Discrim., Ex. D to MSJ, ECF No. 36-4).  On August 26, 2016, Plaintiff was arrested for driving under the influence ("DUI"), and was then placed on administrative leave, pursuant to NRS 62G.223 and NRS 62G.225, pending a termination hearing. (Admin. Leave Letter, Ex. P to MSJ, ECF No. 36-16).  NRS 62G.223(1)(a) provides:

> (1) A department of juvenile justice services shall secure from appropriate law enforcement agencies information on the background and personal history of each applicant for employment with the department of juvenile justice services, and each employee of the department of juvenile justice services, to determine:
> > (a) Whether the applicant or employee has been convicted of:
> > > (10) A violation of any federal or state law prohibiting driving or being in actual physical control of a vehicle while under the influence of intoxicating liquor or a controlled substance that is punishable as a felony;

In August 2016, NRS 62G.225 provided:[1]

> (1) If . . . the information received by the department of juvenile services pursuant to subsection 2 of NRS 62G.223 or evidence from any other sources indicates that . . . an employee of the department of juvenile services:
>> (a) Has charges pending against his or her for a crime listed in paragraph (a) of subsection 1 of NRS 62G.223, the department of juvenile justice services may deny employment to the applicant or terminate the employment of the employee after allowing the applicant or employee time to correct the information as required pursuant to subsection 2 or 3, whichever is applicable.

NRS 62G.225 subsection 3 further provided:

> (3) If an applicant for employment or employee believes that the information received by the department of juvenile services pursuant to subsection 2 of NRS 62G.223 is incorrect, the applicant or employee must inform the department of juvenile justice services immediately. A department of juvenile justice services that is so informed shall give the applicant or employee a reasonable amount of time not less than 60 days to correct the information.

In other words, a DJJS employee can be terminated if there is evidence that the employee has charges pending against him for a DUI. (Admin. Leave Letter, Ex. P to MSJ); (Sullivan Dep. 59:21–14, Ex. V to MSJ).  According to Defendant Schreiber's deposition, DJJS policy has been to terminate every employee with a terminable offense under the statute, such as a DUI. (Schreiber Dep. 37:6–21, Ex. Y to MSJ, ECF No. 37-1).  On September 13, 2016, Plaintiff was terminated following a Step-1 termination hearing. (Settlement Agree., Ex. S to MSJ, ECF No. 36-19).  On September 28, 2016, Plaintiff's termination was upheld at the Step-2 termination hearing. (Sept. Step-2 Letter, Ex. Q to MSJ, ECF No. 36-17).  However, Plaintiff filed another Charge of Discriminationination on December 30, 2016, which the parties elected to resolve without arbitration. (Settlement Agree., Ex. S to MSJ ).  On March 21, 2017, the

---

[1] Effective October 1, 2017, NRS 62G.225 was amended to allow the employee to resolve pending charges pursuant to an added subsection 4, which gave the employee not more than 180 days to resolve the pending charges.

parties entered into a settlement agreement reversing Plaintiff's September 13, 2016, termination and reinstating Plaintiff to his CYPT position. (*Id.*).

Plaintiff filed the instant action on May 8, 2018. (*See generally* Compl., ECF No. 1). The Complaint sets forth seven causes of action: (1) race discrimination in violation of Title VII and NRS 613, against Defendant Clark County; (2) sex discrimination in violation of Title VII and NRS 613 against Defendant Clark County; (3) race discrimination in violation of 42 U.S.C. § 1981 against all Defendants; (4) due process violations under 42 U.S.C. § 1983 against all Defendants; (5) retaliation in violation of 42 U.S.C. § 1981 against all Defendants; (6) retaliatory discharge in violation of Nevada public policy against Defendant Clark County; and (7) discrimination based on disability in violation of the ADA against all Defendants. (Compl. ¶¶ 29–89).  In the present Motion, Defendants argue that summary judgment should be entered in their favor as to all of the claims against them. (MSJ 20:21–23).

## II.   <u>LEGAL STANDARD</u>

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id.*  "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"  *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's

favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  However, the nonmoving party "may not rely on

denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.   DISCUSSION

The Court will address Plaintiff's claims in the following order: (1) disability discrimination under the ADA; (2) employment discrimination on the bases of sex and race; (3) retaliation; and (4) violation of Fourteenth Amendment due process rights under §1983.

### A.  ADA

The Complaint alleges that Defendants terminated Plaintiff on March 3, 2016, in violation of the Americans with Disabilities Act ("ADA"). (Compl. ¶¶ 77–89).  Specifically, Plaintiff claims that even though he is qualified and capable of performing his job, since he can lift and carry fifty pounds, Defendants regard Plaintiff's back injury as a disability that renders

him unable to perform CYPT functions. (*Id.* ¶¶ 9–10, 77–79).  Defendants argue that Plaintiff cannot perform the CYPT job functions because he did not demonstrate the ability to lift and carry 100 pounds or to restrain juveniles. (MSJ 19:22–20:7).

"The ADA makes it unlawful to discharge a person with a qualifying disability on account of that disability." *O'Brien v. R.C. Willey Home Furnishings*, 748 Fed. Appx. 721, 723 (9th Cir. 2018).  Courts analyze disability discrimination claims using the burden shifting framework found in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001).  "Under this analysis, plaintiffs must first establish a prima facie case of [] discrimination." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010).  If a plaintiff establishes a prima facie case, "the burden of production, not of persuasion, shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Hawn*, 615 F.3d at 1155.  "If [the] defendant meets this burden, [the plaintiff] must then raise a triable issue of material fact as to whether the defendant's proffered reasons for [the termination] are mere pretext for unlawful discrimination." *Id.*

"To establish a prima facie case of discrimination under the ADA, [a plaintiff] must show that he is (1) disabled; (2) qualified; and (3) suffered an adverse employment action because of [his] disability.'" *Id.* (quoting *Snead*, 237 F.3d at 1087).  A "disability" under the statute includes three categories: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).  Under the third category of disability, an individual must establish that he has been subjected to discrimination "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3).  However, this impairment cannot be "transitory and minor." *Id.*

The ADA defines a "qualified individual" as a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).  In the Ninth Circuit, courts perform a two-part test to determine whether an individual is qualified. *See Harshbarger v. Sierra Pac. Co.*, 26 Fed. Appx. 707, 710 (9th Cir. 2002).  First, courts determine "whether the individual satisfies the requisite skill, experience, education, and other job-related requirements of the employment position." *Id.*  Second, courts determine "whether the individual can perform the essential functions of the position, either with or without reasonable accommodation." *Id.*

When considering the essential functions of a position, courts may weigh: (1) the employer's judgment as to which functions are essential; (2) written job descriptions; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; (5) the terms of the collective bargaining agreements; (6) the work experience of past incumbents on the job; and (7) the current work experiences of incumbents in similar jobs. *See* 42 U.S.C. § 12111(8); *Harshbarger*, 26 Fed. Appx. at 710 (citing 29 C.F.R. § 1630.2(n)(3)).

In the present Motion, Defendants do not dispute that Plaintiff is a disabled individual within the meaning of the ADA. (*See* MSJ 18:26–20:19); (Reply 10:26–12:17, ECF No. 52). Instead, Defendants argue that Plaintiff is not qualified; while Defendants also do not dispute that Plaintiff has the requisite skill, experience, and education required for the CYPT position, Defendants argue that Plaintiff cannot perform the "essential functions" of the job. (*See* MSJ 18:26–20:19).

The CYPT job description provided by Defendants states that the physical demands of the CYPT position include:

> Mobility to work in a typical court, detention or juvenile justice service program and office setting, including stamina to stand and/or walk for an extended period, and *strength to lift materials weighing up to fifty pounds and to restrain violent or aggressive juveniles*; vision to use standard office equipment and read printed

materials including a computer screen; and hearing and speech to communicate in person or over the telephone. Use standard office equipment and drive motor vehicle in order to transport children. *Strength to lift, carry and restrain children.*

(CYPT Job Descrip., Ex. B to MSJ) (emphasis added).  In contrast to the fifty-pound lifting requirement from the CYPT job description, Defendants have also provided evidence that the ability to lift and carry up to 100 pounds is essential.  For example, Defendants refused to allow Plaintiff to continue working following the August and November FCEs, both of which concluded that Plaintiff could not lift and carry 100 pounds, and thus, could not perform his job duties. (*See* Aug. FCE, Ex. E to MSJ); (Kabins Letter, Ex. L to MSJ).  In fact, Defendants indicated that the reason for Plaintiff's "medical separation" and subsequent termination was based on these "physical restrictions." (Mar. Step-2 Letter, Ex. C to MSJ).  However, deposition testimony from Plaintiff's CYPT co-workers reveals that other employees either very rarely lift 100 pounds, or do not even have the ability to do so. (Walker Dep. 13:16 –14:9, Ex. 11 to Resp., ECF No. 45-12); (Chastain Dep. 17:10 –18:20, Ex. 17 to Resp., ECF No. 45-18); (Ochoa-Lloyd Dep. 23:7–15, Ex. 15 to Resp, ECF No. 45-16).[2]

The Court finds that this evidence presents a conflicting picture of a CYPT's essential job functions; even though Defendants judge a 100-pound lifting requirement as essential to the CYPT position, Plaintiff has presented evidence that lifting up to 100 pounds is not an essential function of that position, based on the CYPT job description and other CYPT employee testimonials. *See* 42 U.S.C. § 12111(8).  Accordingly, there is a genuine issue of material fact concerning the essential functions of the CYPT job, and thus, whether Plaintiff is a qualified

---

[2] Defendants also emphasize that besides the 100-pound lifting requirement, the CYPT job description requires that employees be able to lift violent juveniles.  However, the job description provides no weight requirement with respect to lifting violent juveniles, and in fact, DJJS policy discourages employees from lifting juveniles alone. (CYPT Job Descrip., Ex. B to MSJ, ECF No. 36-2); (Schreiber Decl. 26:11–27:12, Ex. Y to MSJ, ECF No. 37-1).  Further, considering that the continually cited concern with Plaintiff's return to work was his inability to lift and carry 100 pounds, the evidence indicates that the poundage of the lifting requirement is the paramount issue in essential job function. (*See* August FCE, Ex. E to MSJ, ECF No. 36-5); (Kabins Letter, Ex. L to MSJ, ECF No. 36-12); (Mar. Step-2 Letter, Ex. C to MSJ, ECF No. 36-3).

individual within the meaning of the ADA.  *See Harshburger*, 26 Fed. Appx. at 710 (finding a genuine issue of material fact existed when the plaintiff employee presented evidence that lifting over 25 pounds was not an essential function of his position).

In order to establish a prima facie case of disability discrimination, and survive summary judgment, Plaintiff must also show that he suffered an adverse employment action because of his disability. *See O'Brien*, 748 Fed. Appx. at 723.  However, Plaintiff meets this element easily; the parties do not dispute that Plaintiff was terminated due to his apparent inability to perform CYPT essential job functions.  Accordingly, since Plaintiff (1) has a disability within the meaning of the ADA; (2) was terminated because of that disability; and (3) has raised a genuine issue of material fact as to whether he was a qualified individual, the Court cannot grant summary judgment in favor of Defendants with respect to Plaintiff's ADA claim.[3]

### B.  Title VII, NRS 613, and § 1981 Discrimination Claims

Similar to discrimination claims under the ADA, the Court analyzes employment discrimination claims arising under Title VII, NRS 613, and § 1981 within the *McDonnell-Douglas* burden-shifting framework. *See Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1105 (9th Cir. 2008).[4]  As such, to establish an employment discrimination claim, a claimant must first establish prima facie case of discrimination. "Establishing a prima facie Title VII case in response to a motion for summary judgment requires only minimal proof and does not even

---

[3] Because Defendants concede that Plaintiff was terminated due to his disability, the Court need not proceed to the remainder of the *McDonnell-Douglas* burden-shifting framework: Defendants need not provide an alternate reason for Plaintiff's termination, and Plaintiff need not establish pretext. *See Harshbarger*, 26 Fed. Appx. at 711 (citing *Mustafa v. Clark Cnty Sch. Dist.*, 157 F.3d 1169, 1175–76 (9th Cir. 1998)) ("where the employer acknowledges that it relied upon the terminated employee's disability as its stated reason for the termination, *McDonnell-Douglas* burden shifting does not apply.").  Essentially, this case turns on the prima facie case of disability discrimination.

[4] Nevada anti-discrimination statutes, such as NRS 613, are analyzed under the same framework as federal discrimination claims. *See Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005) ("In light of the similarity between Title VII of the 1964 Civil Rights Act and Nevada's anti-discrimination statutes, we have previously looked to the federal courts for guidance in discrimination cases).

need to rise to the level of a preponderance of the evidence." *Palmer v. Pioneer Assocs., Ltd.*, 338 F.3d 981, 984 (9th Cir. 2003).

To establish a prima facie case of employment discrimination under Title VII, NRS 613, or § 1981, a plaintiff must present evidence showing: (1) he is a member of a protected class; (2) he was qualified for the position or was performing his job in a satisfactory manner; (3) he suffered an adverse employment action; and (4) that similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *See, e.g.*, *Zeinali v. Raytheon Co.*, 636 F.3d 544, 552 (9th Cir. 2011); *Surrell*, 518 F.3d at 1105-06.

In the present case, the Complaint asserts claims of employment discrimination based on the Plaintiff's sex (male), and his race (African American). (Compl. ¶¶ 39 –53). The Court will discuss each claim in turn.

### 1. Sex Discrimination

Plaintiff argues that his March 3, 2016, termination was a result of Defendants' discrimination against him based on sex.  Specifically, Plaintiff alleges that he was discriminated against because female CYPTs are not required to lift and carry 100 pounds, but, as a man, he was "medically separated" from his CYPT position because he had not demonstrated an ability to carry 100 pounds. (Resp. 14:16 –15:10, ECF No. 45).  As evidence, Plaintiff identifies nine co-workers who he claims have not had to demonstrate lifting 100 pounds: Manuel Lopez, Connie Coultas, Lisa Chastain, Glynnis Walker, Jay Shelby, Howard Stone, Katie Knox, Jessica Santelli, and Pierre Shelton. (Pl. Interrog. Ans. 6, Ex. W to MSJ, ECF No. 36-23).  Of these named DJJS employees, at least Lisa Chastain and Glynnis Walker, both women, also hold the CYPT position. (*See* Chastain Dep. 14:1–15:5, Ex. 17 to Resp., ECF No. 45-18); (Walker Dep. 11:23–24, Ex. 11 to Resp., ECF No. 42-12).

As an initial matter, it is apparent that, as a man, Plaintiff is a member of a protected class, and that his termination constitutes an adverse employment action. Further as discussed above, a genuine issue of material fact exists as to whether Plaintiff was qualified for the CYPT position and performing it satisfactorily. Thus, to establish a prima facie case of discrimination, Plaintiff must demonstrate that similarly situated women were treated more favorably than Plaintiff. *See, e.g.*, *Zeinali*, 636 F.3d at 552.

Plaintiff has identified two similarly situated female employees who have been treated more favorably than him. Like Plaintiff, both Lisa Chastain and Glynnis Walker are CYPTs within the DJJS who have had the same supervisors as Plaintiff, such as Christina Ochoa-Lloyd and Darren Dimaya. (*See* Sullivan Dep. 85:25–87:8, 93:3–4, Ex. V. to MSJ); (Chastain Dep. 15:6–16:5, Ex. 17 to Resp). Additionally, Plaintiff, Lisa Chastain, and Glynnis Walker all testified that their workplace duties include processing and booking arrested juveniles, as well as communicating with families and law enforcement. (*See* Sullivan Decl. ¶ 3, Ex. 1 to Resp., ECF No. 45-2); (Chastain Dep. 16:11–7, Ex. 17 to Resp); (Walker Dep. 11:25–12:11, Ex. 11 to Resp.). Thus, the evidence presented indicates that Lisa Chastain and Glynnis Walker are similarly situated to Plaintiff for the purposes of the prima facie case analysis. *See Vasquez v. Cnty of Los Angeles*, 349 F.3d 634, n.17 (9th Cir. 2003) (recognizing that similarly situated employees have the same supervisor, are subject to the same standards, and have engaged in the same conduct).

As to more favorable treatment, both Lisa Chastain and Glynnis Walker have testified that as a CYPT, they were never required to demonstrate that they could lift 100 pounds. (*See* Chastain Dep. 19:12–21:4, Ex. 17 to Resp.); (Walker Dep. 13:25–14:3, Ex. 11 to Resp.). Lisa Chastain testified:

> Q.   Have you ever been tested to see if you could lift a hundred
>        pounds?
> A.   No.

> Q.   Has anybody at the Clark County Department of Juvenile Justice Services ever put you though any testing to see if you could lift or carry a hundred pounds?
>
> A.   No.
>
> Q.   And nobody's ever done that, to impose that as a condition of you having your job, have they?
>
> A.   No. And I will add that I don't think that I've had anybody else ever have to have that -- to be tested for lifting or being able to do the hundred pounds. No testing for that.

(Chastain Dep. 20:7–21:4, Ex. 17 to Resp.).  Similarly, Glynnis Walker testified:

> Q.   Okay. Have you ever been -- had to take a test to show that you'd be able to lift a hundred pounds?
>
> A.   No.
>
> Q.   Have you ever had to take any tests to show that you could carry a hundred pounds by yourself?
>
> A.   Are you talking about there?
>
> Q.   On the job.
>
> A.   No, no.

(Walker Dep. 13:25–14:3, Ex. 11 to Resp.).  Thus, the evidence provided by Plaintiff demonstrates that similarly situated, but female, CYPTs were treated more favorably than him because they were not subjected to the same weight-lifting requirement as Plaintiff.

Defendants claim that Plaintiff has still failed to establish a prima facie case of sex discrimination because Plaintiff identified both male and female DJJS employees who allegedly were not required to lift 100 pounds. (MSJ 13:1–9).  However, Defendants have failed to provide evidence that these male DJJS employees are similarly situated to Plaintiff: Defendants point to nothing in the record confirming their job titles, duties, or supervisors.  Thus, Defendants have not met their burden to establish that no genuine issue of material fact exists as to whether there is a prima facie case of employment discrimination based on sex. *See C.A.R. Transp.*, 213 F.3d at 480.  As such, Defendants must articulate some legitimate, nondiscriminatory reason for Plaintiff's March 3, 2016, termination. *See Hawn*, 615 F.3d at

1   1155.  However, Defendant has failed to do so. (*See* MSJ 11:26–14;10); (Reply 7:25–8:24,

2   ECF No. 52).[5]  Accordingly, the Court cannot grant summary judgement in favor of Defendants

3   with respect to Plaintiff's claims of discrimination based on sex.

### 2.   Race Discrimination

5       As above, it is clear that Plaintiff, as an African American man, is a member of a

6   protected class, and that his termination on September 13, 2016, was an adverse employment

7   action.  Further, a genuine issue of material fact exists as to whether Plaintiff was satisfactorily

8   performing his job.  Therefore, to survive summary judgment, Plaintiff must demonstrate that

9   similarly situated non-African American DJJS employees were treated more favorably than him

10   in relation to the termination requirements for DJJS employees under NRS 62G.223 and NRS

11   62G.225. *See, e.g.*, *Zeinali*, 636 F.3d at 552.  However, the Court finds that Plaintiff has failed

12   to do so.

13       Plaintiff claims that, following his DUI arrest, Defendants terminated him pursuant to

14   NRS 62G.223 and NRS 62G.225 on September 13, 2016, because he is an African American

15   man.  To support this assertion, Plaintiff identifies two white DJJS employees, Jodee Marie

16   Dimick and Brian Conway, both of whom were also allegedly in violation of NRS 62G.223 and

17   NRS 62G.225, but neither of whom were terminated. (Resp. 8:8–9:21); (Martin Dep. 57:14–17,

18   Ex. Z to MSJ, ECF No. 37-2).  In response, Defendant Schreiber, the former assistant director

19   for DJJS, testified that "all [DJJS] employees" who were "arrested or had a violation for

20   driving while being in control of a vehicle under the influence . . . were subject to termination"

21   since the passage of NRS 62G.223 and NRS 62G.225. (Schreiber Dep. 14:15–16; 37:6–11).

22   Nonetheless, Plaintiff still claims that Defendants failed to terminate Ms. Dimick, even though

23   she allegedly had a felony drug conviction, which is another terminable offense under NRS

24

25

---

[5] Defendants provide a legitimate, non-discriminatory reason for Plaintiff's September 13, 2016, termination, but not for Plaintiff's March 3, 2016, termination. (*See* MSJ 11:4–23, ECF No. 35); (Reply 6:23–7:23, ECF No. 52).

62G.223(1)(a)(10).  However, Defendants presented evidence that Ms. Dimick's background check, conducted pursuant to NRS 62G.223(1), did not reveal any terminable violations under NRS 62G.223(1)(a) because her drug conviction had been expunged or reduced to a charge not covered by the statute. (Schreiber Dep. 49:15–50:13, Ex. Y to MSJ).  Therefore, Ms. Dimick is not similarly situated to Plaintiff because, unlike Plaintiff, her conduct did not amount to a terminable offense for DJJS employees under the statute.

Plaintiff also alleges that Defendants failed to terminate Mr. Conway, even though he also had a DUI. (Resp. 8:8–9:21).  While Mr. Conway, as a DJJS employee with a terminable offense under NRS 62G.223 and NRS 62G.225, is certainly similarly situated to Plaintiff, he was not treated more favorably.  In fact, the evidence indicates that DJJS subjected Mr. Conway to the exact same termination process as Plaintiff; when Mr. Conway informed DJJS that he had a DUI, he was placed on administrative leave without pay, pending the outcome of a DJJS investigation, just like Plaintiff. (Martin Dep. 55:1–24, Ex. Z to MSJ).  However, Mr. Conway found employment outside of the DJJS prior to his termination hearing, and thus, Defendants did not have the opportunity to actually terminate him.[6] (*See* Martin Dep. 55:13–56:5, Ex. Z to MSJ); (Schreiber Dep. 48:9–49:4, Ex. Y to MSJ).  Defendant Schreiber testified that had Mr. Conway remained in the DJJS, he would have been terminated. (*See* Martin Dep. 55:13–56:5, Ex. Z to MSJ); (Schreiber Dep. 48:9–49:4, Ex. Y to MSJ).  Therefore, Plaintiff has not demonstrated that Mr. Conway, a similarly situated white DJJS employee, was treated more favorably.

Because Plaintiff has failed to provide evidence of similarly situated non-African American DJJS employees being treated more favorably, Plaintiff has not established a prima

---

[6] Mr. Conway transferred to another department within Clark County in a position that was not subject to the same termination requirements in NRS 62G.223 and NRS 62G.225, and thus maintained his employment. (*See* Martin Dep. 55:13–56:5, Ex. Z to MSJ, ECF No. 37-2); (Schreiber Dep. 48:9–49:4, Ex. Y to MSJ).  Neither Defendant Schreiber, nor Defendant Martin were involved in transferring Mr. Conway to another department. (*See* Martin Dep. 55:13–56:5); (Schreiber Dep. 48:9–49:4, Ex. Y to MSJ).

1  facie case of discrimination under Title VII, NRS 613, and § 1981.  Accordingly, the Court

2  grants summary judgment in favor of Defendants with regards to Plaintiff's race discrimination

3  claims.

4      **C.  Retaliation Claims[7]**

5          Retaliation claims are also analyzed using the *McDonnell-Douglas* burden-shifting

6  framework, as discussed above. *See Villiarimo v. Alpha Island Air, Inc.*, 281 F.3d 1054, 1064

7  (9th Cir. 2002).  To establish a *prima facie* case of retaliation under 42 U.S.C. § 1981, a

8  plaintiff must demonstrate: (1) a protected activity; (2) an adverse employment action; and (3) a

9  causal link between the protected activity and the adverse employment action. *See Surrell*, 518

10  F.3d at 1108; *Manatt v. Bank of America, NA*, 339 F.3d 792, 801 (9th Cir. 2003).  Once

11  established, the burden shifts to the defendant to set forth a legitimate, non-retaliatory reason

12  for its actions. *Id.*  At that point, the plaintiff must produce evidence to show that the reasons

13  stated by the defendant were a pretext for retaliation. *Id.*

14          Here, Defendant concedes that: (1) Plaintiff engaged in protected activity when he filed

15  a charge of discrimination with the EEOC; and (2) Plaintiff suffered an adverse employment

16  action when DJJS terminated him. (MSJ 17:20–23).  However, Defendant argues that Plaintiff

17  cannot establish a causal link between the filing of the charge of discrimination on August 6,

18  2016, and his termination on September 13, 2016, because Plaintiff was arrested for a DUI on

19  August 26, 2016. (*Id.* 17:24–18:24).

20          To establish the causal nexus between protected activity and an adverse employment

21  action, a plaintiff may rely on the temporal proximity between the two events, as long as they

22  occurred "very close" in time. *See Clark Cnty Sch. Dist. v. Breedon*, 532 U.S. 268, 273 (2001).

23  However, courts have found that where a "significant intervening event" occurs to break the

24

25

---

[7] This section addresses Plaintiff's retaliation claim under 42 U.S.C. § 1981, as well as his claim for retaliatory discharge in violation of Nevada public policy.

chain of causation between the protected activity and the adverse employment action, temporal proximity is no longer enough to establish causation. *See Holmes v. Baca*, No. 3:17-cv-00320-RCJ-WGC, 2018 WL 5815544, at *4 (D. Nev. Nov. 6, 2018) (citing *Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 314 (2d Cir. 2005)). *See also Brown v. Dignity Health*, No. CV-18-03418-PHX-JJT, 2020 WL 3403088, at *9 (D. Ariz. June 19, 2020) ("given the significant intervening events, [the] [p]laintiff cannot produce sufficient evidence to create a genuine issue of material fact as to whether a causal link exists between [the] [p]laintiff's report to HR and [the] [d]efendant's adverse employment actions.").

In the present case, it is true that a close proximity exists between the charge of discrimination filed on August 6, 2016, and Plaintiff's termination on September 13, 2016. *See Arn v. News Media Grp.*, 175 Fed. Appx. 844, 846 (9th Cir. 2006) (finding that two months between the protected conduct and adverse employment action was sufficient temporal proximity to create a genuine issue of material fact as to whether a causal link exists). However, Plaintiff cannot use this temporal proximity as the only evidence establishing a causal link between the charge of discrimination and his termination because a significant and unrelated intervening event occurred between those two dates: Plaintiff's August 26, 2016, DUI arrest, which is also Defendants' stated reason for Plaintiff's termination.  Considering this significant intervening event, in addition to the fact that Plaintiff has identified no evidence of causation besides temporal proximity, the Court finds that Plaintiff has not demonstrated the existence of a genuine issue of material fact concerning the causal link between protected conduct and an adverse employment action.  Accordingly, Plaintiff has not established a prima facie case of retaliation discrimination, and the Court grants summary judgment in favor of

1    Defendants.  Similarly, with respect to Plaintiff's claim for retaliatory discharge, the Court also

2    grants summary judgment in favor of Defendants.[8]

3        **D.  § 1983 Claims**

4        To successfully bring claim under 42 U.S.C. § 1983, a plaintiff must show (1) a

5    violation of a constitutional right and (2) that the alleged violation was committed by a person

6    acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40

7    (1988).  However, § 1983 "is not itself a source of substantive rights, but merely provides a

8    method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386,

9    393–94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

10       To establish the first prong of his § 1983 claim, the Complaint asserts that Plaintiff was

11   denied procedural due process in violation of the Fourteenth Amendment when he was

12   terminated on September 13, 2016, following his DUI arrest. (*See* Compl. ¶ 54); (Resp. 19:25–

13   21:15).  Plaintiff claims that Defendants deprived him of a property interest, his CYPT position,

14   without due process of law because Plaintiff was not given an adequate opportunity to

15   challenge his termination decision or to resolve the DUI charge levied against him. (Resp.

16   19:25–21:15).[9]

17

18   _____

19   [8] In Nevada, recovery for retaliatory discharge requires that Plaintiff demonstrate that his protected conduct was
     the proximate cause of his discharge. *See Allum v. Valley Bank of Nevada*, 114 Nev. 1313, 1319–20 (1998).

20   Because Plaintiff could not establish a casual link between the charge of discrimination and his termination, he
     also cannot maintain a cause of action for retaliatory discharge in violation of Nevada public policy.

21   [9] Plaintiff also argues that portions of NRS 62G.223 and NRS 62G.225 are facially unconstitutional. (Compl. ¶
     56, ECF No. 1). "To bring a successful facial challenge outside the context of the First Amendment, 'the

22   challenger must establish that no set of circumstances exists under which the statute would be valid.'" *Hotel &
     Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 971 (9th Cir. 2003) (citing *United States v. Salerno*,

23   481 U.S. 739, 745 (1987)).  Here, Plaintiff makes no attempt to establish that no set of circumstances exist under
     which NRS 62G.223 and NRS 62G.225 would be valid, or to otherwise support the assertion of facial

24   unconstitutionality with facts and law.  Further, in the Response to the present Motion, Plaintiff argues that NRS
     62G.223 and NRS 62G.225 were unconstitutional *as applied* to Plaintiff's termination because they allowed
     DJJS to terminate Plaintiff before he had an opportunity to resolve his pending DUI charge. (Resp. 19:24–21:15,

25   ECF No. 45).  However, because this claim was not raised in the Complaint, the Court will not consider it. *Patel
     v. City of Long Beach*, 564 Fed. Appx. 881, 882 (9th Cir. 2014) ("a plaintiff cannot raise a new theory for the

Whether a procedural due process violation has occurred requires a two-step inquiry: "the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989). For terminations of public employment, constitutionally sufficient procedures include "written notice of the charges against [the employee], an explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).

Here, the parties do not dispute that Plaintiff, as a public employee, has a constitutionally protected property interest in his continued employment. (*See* MSJ 15:13–16 (citing *Loudermill*, 470 U.S. at 54)). Accordingly, to establish that there has been a violation of a constitutional right, the remaining question becomes whether the procedures attendant upon the deprivation of Plaintiff's employment were constitutionally sufficient.

After considering the evidence, the Court finds that Plaintiff "received all the process that was due to him." *See Kern v. Clark Cnty*, 231 Fed. Appx. 622, 622 (9th Cir. 2007) (quoting *Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir. 1998)). First, Plaintiff received notice explaining that, pursuant to NRS 62G.223 and NRS 62G.225, he was being recommended for termination because he had been arrested for a DUI. (Admin. Leave Letter, Ex. P to MSJ). Next, Plaintiff, accompanied by his union representative Bruce Yarwood, appeared at his Step-1 termination hearing to explain that termination was not warranted because the DUI charge could still be dismissed. (*Id.*). Finally, Plaintiff had the opportunity to challenge the termination decision at a Step-2 hearing; Plaintiff, represented by attorney Adam Levine, once again explained why termination was not warranted. (Sept. Step-2 Letter, Ex. Q to

---

first time in opposition to summary judgment"). Accordingly, no claims alleging the unconstitutionality of NRS 62G.223 and NRS 62G.225 survive summary judgment.

MSJ).  This process fully complies with constitutionally sufficient procedures because Plaintiff received notice and an explanation of the charges against him and had an opportunity to present his side of the story during the Step hearings. *See Loudermill*, 470 U.S. at 546. *See also Kern*, 231 Fed. Appx. at 622–623 (finding that the plaintiff "received all the process due to him" after he was terminated following his Step hearings).  Thus, because Plaintiff cannot establish that his constitutional rights have been violated, the Court grants summary judgement in favor of Defendants with regards to Plaintiff's § 1983 claims.

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 35), is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that within twenty-one days of the entry of this Order, the parties shall file a Proposed Joint Pretrial Order.

**DATED** this ___17___ day of March, 2021.

_____

Gloria M. Navarro, District Judge
United States District Court